UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LAKEISHA M. LOWE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:25-cv-00086-SNLJ |
| | ) |
| JOSEPH WHISTLER and | ) |
| CITY OF CAPE GIRARDEAU, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Docs. 10, 11]. Plaintiff opposes the motion. [Doc. 13]. For the reasons set forth below, the motion to dismiss plaintiffs' complaint is GRANTED in part and DENIED in part.

## I. PROCEDURAL BACKGROUND

Plaintiff filed the instant action on May 21, 2025, alleging violations of her civil rights under 42 U.S.C. § 1983: unreasonable arrest and seizure by defendant Joseph Whistler (hereinafter referred to as "Whistler") and *Monell* liability against defendant City of Cape Girardeau. [Doc. 1]. Whistler is being sued in his individual capacity only. [*Id.*]. Plaintiff's complaint seeks compensatory, special, and punitive damages, as well as costs and disbursements, including reasonable attorneys' fees and prejudgment interest. [*Id.*]. Defendants have filed a motion to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docs. 10, 11].

## II.     FACTUAL BACKGROUND

The following is a summary of plaintiffs' account of the events.  Around noon on April 3, 2021, plaintiff and her daughter gathered trash from their home, carried it to a small backyard firepit, and ignited the trash. [Doc. 1 at ¶10].  At approximately 1:30 p.m., Cape Girardeau Fire Department arrived at plaintiff's residence to assess the status of the trash burn. [*Id.* at ¶13].  Whistler was dispatched to plaintiff's residence to assist the fire department. [*Id.*].  Upon arrival, one of the firefighters told Whistler that plaintiff was negligently burning trash in her backyard and that she should be issued a citation. [*Id.* at ¶1].

Whistler approached plaintiff to interrogate her and issue her a citation for negligent burning, a municipal code violation. [*Id.* at ¶¶1, 14].  Plaintiff told Whistler and the fire department to leave her property. [*Id.* at ¶14].  Plaintiff then turned away from him, ascended the stairs to her back porch, and entered her kitchen. [*Id.*].  Whistler followed plaintiff up the stairs, into the back porch, and opened the screen door on the back door entry into the kitchen. [*Id.* at ¶16].  Whistler placed his left foot inside the threshold of the kitchen while his right foot remained outside of the kitchen so that he was straddling the threshold of the kitchen door. [*Id.* at ¶¶1, 17].

Whistler then unholstered his taser and pointed it at plaintiff. [*Id.* at ¶¶1, 18].  Whistler instructed plaintiff to exit her residence. [*Id.* at ¶1].  Plaintiff did not immediately comply and instead remained in her kitchen. [*Id.*].  Whistler then tased plaintiff in her back. [*Id.* at ¶¶1, 18].  Plaintiff lost consciousness and went limp. [*Id.* at ¶¶1, 19].  Plaintiff fell to the floor of her kitchen striking her back and head on the

2

kitchen floor while convulsing. [*Id.*]. Plaintiff's daughter witnessed all of these events. [*Id.* at ¶¶1, 20]. Whistler then went into the kitchen and handcuffed plaintiff behind her back. [*Id.* at ¶¶1, 21]. Plaintiff was transported to Cape Girardeau Police Department's jail and was charged with negligent burning, false declaration, and resisting arrest. [*Id.*].

## III.    LEGAL STANDARD

The purpose of a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 527 (8th Cir. 2001) *quoting Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). In addressing a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *United States ex rel. Ambrosecchia v. Paddock Laboratories, LLC*, 855 F.3d 949, 954 (8th Cir. 2017). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a court can infer from the factual allegations no more than a "mere possibility of misconduct," the complaint

3

must be dismissed.  *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) *citing Iqbal*, 556 U.S. at 662.

## IV.  DISCUSSION

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Department of Social Services*, 436 U.S. 658, 685 (1978).  To state a claim under 42 U.S.C. § 1983, a plaintiff must establish:  (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's claim in Count 1 is for unreasonable arrest and seizure by Whistler in violation of the Fourth Amendment.  Specifically, plaintiff alleges that (1) the unlawful, warrantless arrest and seizure insider her home violated her Fourth Amendment rights; (2) the excessive use of force in tasering her was objectively unreasonable and violated clearly established Fourth Amendment law; and, (3) Whistler violated her Fourth and Fourteenth Amendment rights by failing to render her medical aid.

Whistler contends that he is entitled to qualified immunity because:  (1) he did not violate a constitutional right when he pursued plaintiff inside her home and arrested her; (2) he did not violate a constitutional right when he used a taser to accomplish the arrest; (3) any claim that he failed to provide medical aid is conclusory and insufficient to state a claim; and, (4) plaintiff has not sufficiently plead that he violated a clearly established

4

law.  The City of Cape Girardeau contends that plaintiff has failed to state a claim upon which relief can be granted against it under *Monell*.

## A.  Whistler's Motion to Dismiss Count I based on Qualified Immunity

"Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Watkins v. City of St. Louis, Missouri*, 102 F.4th 947, 951 (8th Cir. 2024).  "To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.*  The court may consider these steps in any order, but unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity.  *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017).

A right is clearly established if, "at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing ' is unlawful." *Gerling v. City of Hermann, Missouri*, 2 F.4th 737, 741-42 (8th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  A plaintiff must show either "controlling authority" or a "robust 'consensus of cases of persuasive authority'" that "placed the statutory or constitutional question beyond debate." *Id*. (quoting *Ashcroft*, 563 U.S. at 741-42).  Accordingly, in analyzing qualified immunity, this Court must determine whether plaintiffs' allegations present a claim that defendants violated well-established rights of the plaintiffs. *Otey v. Marshall, et al.*, 121 F.3d 1150, 1155 (8th Cir. 1997)*.*

5

### *1. Warrantless arrest and seizure inside home*

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *U.S. v. Jones*, 565 U.S. 400, 404 (2012).  An officer may carry out a warrantless arrest in a public place if he has probable cause to believe that a person is committing or has committed "even a very minor criminal offense." *Gerling*, 2 F.4th at 742 (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)).

"Probable cause by itself, however, is insufficient to justify an arrest in a home." *Gerling*, 2 F.4th at 742.  "[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.  *Id.* (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)). "[A] warrantless arrest that occurs inside an individual's home is unconstitutional unless the officers demonstrate the existence of probable cause and exigent circumstances." *Id.* (quoting *Duncan*, 869 F.2d at 1102).  "[I]n the absence of exigent circumstances, an officer cannot reach over the threshold and into a person's home to forcibly effectuate a warrantless arrest." *Id.* (quoting *Mitchell v. Shearrer*, 729 F.3d 1070, 1076 (8th Cir. 2013)).

Exigent circumstances applies when "'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable." *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Kentucky v. King*, 563 U.S. 452, 460 (2011)).  This exception allows officers to handle emergency situations presenting a "compelling need for official action and no time to secure a

6

warrant." *Id.* (quoting *Riley v. California*, 573 U.S. 373, 402 (2014)).  Those exigencies that have been recognized include entering a home without a warrant to render emergency assistance to an injured occupant, to protect an occupant from imminent injury, to ensure the officer's own safety, to prevent imminent destruction of evidence, or to prevent a suspect's escape.  *Lange*, 594 U.S. at 301.  Those situations are considered exigent or emergency because a delay required to obtain a warrant would bring about "some real immediate and serious consequences" – and so the absence of a warrant is excused.  *Id.* at 302 (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 751 (1984)).

In the present case, the issue raised is whether Whistler is entitled to qualified immunity on plaintiff's Fourth Amendment claim that he entered her home without a warrant to effect an arrest.  The Court's first inquiry must be whether sufficient facts have been alleged that Whistler violated plaintiff's Fourth Amendment rights.  In reviewing the allegations of plaintiff's complaint in the light most favorable to the plaintiff, plaintiff was never told that she was under arrest when she was confronted by Whistler outside her home.  Rather, the allegations of the complaint only indicate that Whistler sought to interrogate her and issue her a citation.  Plaintiff then informed Whistler and the fire department to leave her property.  She turned and proceeded to walk towards her residence.  The allegations of the complaint then indicate that Whistler proceeded to follow her.  There are no allegations that Whistler ever told plaintiff she was under arrest or that she needed to stop.  Whistler proceeded to follow plaintiff to the threshold of her residence where he then had one foot inside her residence and one foot outside.  Again, there are no allegations that Whistler ever told plaintiff she was under arrest or needed to

7

stop.  The first and only allegation we have regarding commands given by Whistler are after he pulled his taser, pointed it at plaintiff, and told her to exit her residence.  When plaintiff did not immediately comply, Whistler tased plaintiff before moving in to handcuff her and place her under arrest.  If these allegations made by plaintiff are accepted, then any reasonable officer should have known that he could not enter plaintiff's home to make an arrest without a warrant or an exception to the warrant requirement that is not present here.  Plaintiff has thus set forth sufficient facts to show an alleged violation of her Fourth Amendment right to be free from an unreasonable seizure by way of the warrantless arrest inside her residence.

　　　The second inquiry the Court must consider regarding the qualified immunity analysis is whether the right to be free from an unreasonable seizure by way of a warrantless arrest inside a residence was a clearly established right as of April 2021.  This Court finds that it was.  In fact, it has long been established that warrantless searches and seizures inside a home are presumptively unreasonable.  The burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.  *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984).  That burden cannot be satisfied based upon the allegations in plaintiff's complaint.  *See Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (the court must decide Rule 12(b)(6) motions based solely upon the allegations contained in the face of the complaint).

　　　Based on the foregoing and accepting plaintiff's version of the facts as true, this Court concludes that she has sufficiently alleged a violation of her clearly established

right to be free from a warrantless arrest and seizure insider her residence under the Fourth Amendment. Thus, Whistler is not entitled to qualified immunity at this stage. Plaintiff's claim for unreasonable seizure under the Fourth Amendment shall not be dismissed.

### 2. *Excessive Force*

The analysis of excessive force claims focuses on the context of seizures under the Fourth Amendment, applying its reasonableness standard. *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Id.* at 502 (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)). The reasonableness of an officer's use of force is evaluated from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). This allows "for the fact that police officers are often forced to make split-second decisions – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397. "The reasonableness inquiry, however, is an objective one: 'the question is whether the officers' actions are 'objectively reasonable in light of the facts and circumstances confronting them.'" *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (quoting *Graham*, 490 U.S. at 397). Relevant factors include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and, (3) whether the suspect is actively resisting arrest or attempting to evade

9

arrest by flight.  *Graham*, 490 U.S. at 396.  If someone is not suspected of a serious crime, is not threatening anyone, and is neither feeling nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against them.  *See e.g., Jackson v. Stair*, 944 F.3d 704, 713 (8th Cir. 2019).  "Force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.  *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012).

Given the circumstances surrounding plaintiff being tasered and arrested, the Court is not convinced that Whistler's use of force was objectively reasonable.  First, the complaint did not suggest that plaintiff was suspected of anything more than negligently burning trash in her backyard, which was merely an ordinance violation.  Second, plaintiff's actions posed, at most, a minimal safety threat to Whistler.  Plaintiff walked away from Whistler to her residence, she never had a weapon, and she never verbally or physically threatened anyone.  Third, the complaint does not suggest that plaintiff was ever told that she was going to be under arrest.  Instead, the facts of the complaint only allege that Whistler had indicated an intent to interrogate plaintiff to issue her a citation.  The complaint also does not suggest that Whistler told her to stop when she turned to walk to her residence.  Accordingly, based on the allegations in the complaint, there is nothing definitive that would indicate plaintiff was actively resisting arrest or trying to evade arrest by flight.  Her principal offense, it would appear, was walking away from Whistler and then disobeying his command to exit her residence.  Accordingly, plaintiff

10

has presented sufficient allegations for a cause of action alleging that Whistler violated her Fourth Amendment rights when he tased her.

Next, the Court must consider whether the right to be free from excessive use of force was clearly established as of April 2021. "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The right to be free from excessive force in the context of an arrest was clearly established under the Fourth Amendment's prohibition against unreasonable searches and seizures. *Graham*, 490 U.S. at 396. Moreover, it was clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public. *Id.* At the time Whistler deployed his taser and arrested plaintiff, the law was sufficiently clear to inform a reasonable officer that it was unlawful to taser a nonviolent, suspected misdemeanant who was not actively fleeing or resisting an arrest, who posed little to no threat to anyone's safety, and whose only noncompliance from the facts alleged in the complaint was to disobey one order to exit her residence.

Accepting plaintiff's version of the facts as true, this Court concludes that she has sufficiently alleged a violation of her clearly established right to be free from excessive force. Thus, Whistler is not entitled to qualified immunity at this stage. Plaintiff's claim for excessive force under the Fourth Amendment shall not be dismissed.

11

### 3. *Deliberate Indifference to a Medical Need*

To establish a claim for deliberate indifference to a medical need under § 1983, a plaintiff must demonstrate that she suffered an objectively serious medical need, and that the officer had actual knowledge of that need but deliberately disregarded it. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012). A medical need is serious "if the medical need in question is supported by medical evidence, such as a physician's diagnosis, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017). An officer's deliberate indifference to a serious medical need is "more than negligence, more even than gross negligence." *Presson v. Reed*, 65 F.4th 357, 366 (8th Cir. 2023). "The level of culpability required to demonstrate deliberate indifference on the part of prison officials is equal to criminal recklessness." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

Plaintiff's only allegation in her complaint for deliberate indifference to a serious medical need is that Whistler failed to render aid following her loss of consciousness. [Doc. 1 at ¶44]. Other than a broad statement that plaintiff lost consciousness after being tased, plaintiff apparently regained consciousness as Whistler rushed in to handcuff her. [Id. at ¶1]. Other than this brief loss of consciousness, there are no additional factual allegations to support that plaintiff suffered a serious medical need. Nor are there additional factual allegations upon which this Court could find deliberate indifference arising to a level of criminal recklessness on the part of Whistler. This "threadbare recital" of an alleged cause of action for deliberate indifference supported only by

12

conclusory statements is insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Accordingly, plaintiff's claim against Whistler for failing to render medical aid must be dismissed and stricken from the complaint.

**B.  City of Cape Girardeau's Motion to Dismiss Count II based on *Monell***

Under § 1983, a municipality cannot be held liable "solely because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978).  Rather, a municipality may be liable only for a constitutional violation that resulted from an official municipality policy, an unofficial custom, or a deliberately indifferent failure to train or supervise.  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).  Here, plaintiff asserts in her complaint that the City of Cape Girardeau has a custom of permitting police officers to use excessive force, which is endorsed by city officials, as evidenced by their failure to discipline officers for improper use of force.

To state a claim for custom liability, plaintiff must allege facts that demonstrate:

a)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by a governmental entity's employees;

b)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

c)  That [she] was injured by acts pursuant tot the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (cleaned up).

13

Liability for an unconstitutional custom cannot arise from a single act. *Id.* "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (cleaned up).

The City of Cape Girardeau argues in its motion to dismiss that the municipal liability claim must be dismissed because the allegations are insufficient to establish a pattern. "The Eighth Circuit has not directly addressed the quantum of continuing, widespread, persistent conduct a plaintiff must allege to satisfy the Iqbal standard in [the motion to dismiss] context." *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 895 (E.D. Mo. 2019) (cleaned up). In a summary judgment analysis, the Eighth Circuit has held that, "two incidents of excessive force – even assumed to be true – cannot be considered a pattern of widespread and pervasive unconstitutional conduct." *Brewington*, 902 F.3d at 802. At the other end of the spectrum, the Eighth Circuit has ruled that "copious evidence of past misconduct," including corroborated testimony that a city had received "many citizen complaints," does constitute sufficient evidence to establish a municipal custom. *Harris v. City of Pagedale*, 821 F.2d 499, 504-06 (8th Cir. 1987) (finding that the plaintiff proved the existence of a municipal custom based on detailed evidence regarding the particular police officer's previous misconduct and the city's failure to investigate or punish that conduct).

In the context of a motion to dismiss, as we are dealing with here, rulings in this district have found that claims of prior unconstitutional conduct, which exceeded the number of prior excessive force incidents alleged by plaintiff, were insufficient to establish custom. *See, e.g., Ball-Bey*, 415 F. Supp. 3d at 895 (finding fourteen instances

14

alleged by the plaintiff over a six-year period in a city with 319,000 residents did not plausibly suggest the existence of a widespread, persistent pattern of unconstitutional misconduct); *Naes v. City of St. Louis*, 4:19-CV-02132-SEP, 2020 WL 6044356 (E.D. Mo. Oct. 13, 2020) (finding five instances of misconduct over more than five years are insufficient to establish a continuing, widespread, persistent pattern of unconstitutional conduct); *Burbridge v. City of St. Louis*, 430 F. Supp. 3d 595, 620-21 (E.D. Mo. 2019) (finding "two or three" instances of unconstitutional conduct a year apart does not establish a custom).

Further, plaintiff cannot rely on settlements to prove a custom.[1] The mere fact that a complaint for excessive force was filed and eventually settled does not, in and of itself, prove the use of excessive force. *Ball-Bey v. Chandler*, 4:18-CV-01364-SPM, 2020 WL 6708516, at *9 (E.D. Mo. Nov. 16, 2020) (quoting *Simpson v. Ferry*, 202 F. Supp. 3d 444, 453 (E.D. Pa. 2016) ("mere allegations, and even settlements, do not establish liability or the existence of an unlawful custom"). This is especially true of complaints or cases that are still pending.

Considering the allegations in the complaint within the relevant legal framework, the incidents or allegations of alleged use of excessive force by officers in 2020, 2021, 2022, and 2025 are insufficient to establish a continuous, widespread, and persistent pattern.

---

[1] Under certain circumstances, prior settlements may show notice of an unlawful custom. *Naes v. City of St. Louis*, 4:19-CV-02132-SEP, 2021 WL 6049815 (E.D. Mo. Dec. 21, 2021) (citing Fed. R. Evid. 408; *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966 (8th Cir. 2011).

15

Plaintiff also assert a failure to train or supervise by the City of Cape Girardeau as a basis for municipal liability. That claim fails for the same reason as the custom claim. Plaintiff has not alleged sufficient facts to support the existence of a continuing, widespread, persistent pattern of the use of excessive force. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* failure to train or supervise claim where the plaintiff failed to allege sufficient facts demonstrating the existence of a custom that caused the alleged deprivation of the plaintiff's rights).

Since plaintiff has not alleged sufficient facts to support a municipal liability claim against he City of Cape Girardeau, Count II is dismissed. The Court is cognizant that "[w]hen a complaint is filed, a plaintiff may not be privy to the facts necessary to accurately describe or identify any policies or customs which may have caused the deprivation of a constitutional right." *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). If plaintiff discovers more instances of police officers using excessive force in the City of Cape Girardeau sufficient to demonstrate a continuing, widespread, and persistent pattern, she may seek leave to amend the complaint.

V.   CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss [Doc. 10] is **GRANTED in part** and **DENIED in part** as set forth herein.

16

**IT IS FURTHER ORDERED** that defendants' motion to dismiss [Doc. 10] is **GRANTED** as to the claim in Count II against defendant City of Cape Girardeau.  The claim in Count II and the defendant City of Cape Girardeau are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss [Doc. 10] is **GRANTED in part** and **DENIED in part** as to the claim in Count I against defendant Joseph Whistler.  Plaintiff's claim against defendant Joseph Whistler for violation of her Fourth and Fourteenth Amendment rights in failing to render medical aid to a serious medical need [Doc. 1 at ¶44] is **DISMISSED** and shall be stricken from the complaint.  Plaintiff's remaining claims in Count I against defendant Joseph Whistler for other violations of her Fourth Amendment rights shall remain.

**IT IS FINALLY ORDERED** that this matter will be scheduled for a Rule 16 conference by separate Order.

Dated this 22nd day of February, 2026.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

17